SPECIALTY BAKERIES, INC., et al.

v.

ROBHAL, INC., et al.

Civil Action No. 97–1057.

United States District Court,
E.D. Pennsylvania.

April 15, 1997.

---

Arthur L. Pressman, Abraham, Pressman & Bauer, P.C., for Plaintiffs.

Roger P. Cameron, Mark A. Lublin, Obermayer, Rebmann, Maxwell & Hippel, L.L.P., Philadelphia, PA, for Defendants.

## MEMORANDUM

BARTLE, District Judge.

This matter may be succinctly summarized as a biting battle over bagels between a franchisor and franchisee. Not surprisingly, each side argues that the other's case is full of holes.

■ The court has subject matter jurisdiction based on diversity of citizenship under

28 U.S.C. § 1332.[1] After a hearing on franchisor's motion for a preliminary injunction, the court makes the following findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## I

The plaintiffs in this action are Specialty Bakeries, Inc. ("Specialty Bakeries"), Rocco Fiorentino ("Fiorentino"), Frank Guglielmo ("Guglielmo"), John Gerber, Jr. ("Gerber"), and Manhattan Bagel Company, Inc. ("Manhattan Bagel Company") (hereinafter collectively "franchisor").[2] Specialty Bakeries formerly traded as "Bagel Builders," a franchise system of retail bagel stores. On May 22, 1996, through a merger transaction, Specialty Bakeries became a wholly-owned subsidiary of Manhattan Bagel Company. Specialty Bakeries, Guglielmo, Fiorentino, and Gerber thereupon became employees and shareholders of Manhattan Bagel Company. Defendants are HalRob, Inc. ("HalRob") and RobHal Management, Inc. ("RobHal") (hereinafter collectively "HalRob").[3]

In September, 1995 HalRob and RobHal entered into a written franchise agreement with Specialty Bakeries entitled "Bagel Builders Franchise Agreement" as well as a first amendment thereto. As a result, HalRob obtained the right to operate a franchise for a Bagel Builders Restaurant in Broomall, Pennsylvania. The Broomall location, with which we are concerned here, opened as a Bagel Builders in April, 1996.

The franchise contract contains an arbitration provision which is at the heart of the controversy before the court. It reads:

### A. AGREEMENT TO ARBITRATE

All disputes and claims under this Agreement, the rights and obligations of the parties hereto, your purchase of goods or other claims or causes of action relating to the performance of either party, and/or the purchase of the franchise shall be settled by arbitration at the office of the American Arbitration Association in Philadelphia, Pennsylvania, in accordance with the Federal Arbitration Act and the Commercial Rules of the American Arbitration Association. Judgment upon the award of the arbitrator may be entered in any court having jurisdiction thereof. This agreement to arbitrate shall survive any termination or expiration of this Agreement.

### B. PRELIMINARY RELIEF

Nothing contained herein shall prevent us from applying to or obtaining from any court having jurisdiction a writ of attachment, temporary injunction, preliminary injunction and/or other emergency relief available to safeguard and protect our interest before the filing of any arbitration proceeding or pending the trial or handing down of a decision or award pursuant to any arbitration proceeding conducted hereunder.

Franchise Agreement ¶ XXVIII.

The parties also agreed to a first amendment which added the following to the above provisions:

### A. AGREEMENT TO ARBITRATE

The following language is to be added to this Paragraph:

Any arbitration award shall be final, binding, and non-appealable. The fees of the Association and the arbitrator shall be paid by the losing party as designated by the arbitrator. The arbitration hearing shall be conducted pursuant to the Federal Arbitration Act.

### B. PRELIMINARY RELIEF

The following language is to be added to this Paragraph:

Franchisor and Franchisee shall have the right to apply to any court having jurisdiction for a writ of attachment, temporary

---

**1.** The Federal Arbitration Act, 9 U.S.C. §§ 1–14, which is involved in this case, is not an independent basis for federal question jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 25, n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983).

**2.** Specialty Bakeries and Manhattan Bagel Company are corporations organized and existing pursuant to the laws of the State of New Jersey with principal places of business in Eatontown, New Jersey. Fiorentino, Guglielmo, and Gerber are also citizens of New Jersey.

**3.** HalRob and RobHal are corporations organized and existing under the laws of the Commonwealth of Pennsylvania with their principal places of business in Pennsylvania.

injunction, preliminary injunction, and/or other emergency relief available to safeguard and protect their rights, prior to the filing of any arbitration proceeding or pending the trial, or handing down of a decision or award pursuant to the any [sic] arbitration proceeding conducted hereunder.

First Amendment ¶ XXVIII. In the first amendment, the parties also agreed to a non-compete clause which HalRob contends gave it an exclusive territory within a four mile radius of their Broomall restaurant. The amendment states in relevant part, "... nor shall Franchisor, within four (4) miles of the Franchisee's restaurant location, approve another Bagel Builders Franchise restaurant location for a third party, or execute a written Lease Agreement for a restaurant location as a company-owned, Bagel Builders location." First Amendment ¶ XXIV(B).

Prior to Manhattan Bagel Company's acquisition of Specialty Bakeries in May, 1996, the former had two franchisees operating under the name of "Manhattan Bagel" within four miles of HalRob's Bagel Builders Restaurant. Manhattan Bagel Company also had an agreement dated July, 1995, with a new franchisee. That franchisee opened a Manhattan Bagel store on June 18, 1996 within the same area.

The Bagel Builders trade name was discontinued after Manhattan Bagel Company acquired Specialty Bakeries. In their August 1, 1996 Addenda to their franchise agreement, Specialty Bakeries and HalRob agreed to: (1) change the exterior sign of their Bagel Builders' Restaurants to "Manhattan Bagel" at Specialty Bakeries' expense; (2) change the designated supplier of bagels and bagel products from Specialty Bakeries to Manhattan Bagel Company; and (3) change the royalty and advertising requirements under the franchise agreements. Otherwise, the earlier contracts with Specialty Bakeries remained in full force. Because of Manhattan Bagel Company's acquisition of Specialty Bakeries, four Manhattan Bagel stores now coexist in the Broomall vicinity. This state of affairs has led to the present controversy between HalRob and the franchisor.

Instead of immediately proceeding to arbitration as provided in the franchise agreement, HalRob filed suit on February 7, 1997 in the Superior Court of New Jersey, Camden County, Chancery Division. *HalRob, Inc. v. Manhattan Bagel Co.,* Civil Action No. C1697. In the New Jersey complaint, HalRob alleges that as a result of Manhattan Bagel Company's ownership of Specialty Bakeries, three Manhattan Bagel businesses now illegally compete with HalRob's store within four miles of its situs. HalRob's New Jersey complaint alleges seven causes of action: (1) breach of contract; (2) intentional interference with economic advantage; (3) unjust enrichment; (4) recoupment/constructive termination; (5) conspiracy and concerted action; (6) intentional or negligent misrepresentation; and (7) recision. It also makes a jury demand and seeks injunctive relief, compensatory damages, punitive damages, attorney's fees, and costs.

Counts one and two of the New Jersey complaint also request the court to "permanently enjoin Defendants Manhattan Bagel Company, Inc. and Specialty Bakeries, Inc. during the term of the [franchise] agreement and any extension or renewal of that agreement." New Jersey Complaint ¶¶ 40, 42. Specifically, HalRob asks the state court to restrain Specialty Bakeries and Manhattan Bagel Company from:

a. directly or indirectly having, receiving or obtaining any financial or other interests in any business offering bagels other than Plaintiff HalRob, Inc.'s business, within four (4) miles of Plaintiff HalRob, Inc.'s place of business;

b. approving and/or continuing the approval for another restaurant location for any third party, which location is within four (4) miles of Plaintiff HalRob, Inc.'s place of business in Broomall;

c. executing and/or continuing to perform pursuant to a written lease agreement for another restaurant location within four (4) miles of Plaintiff HalRob, Inc.'s place of business in Broomall;

d. selling any goods, services or other things to or buying any goods, services or other things from any business offering bagels, other than Plaintiff HalRob, Inc.'s

business, within four (4) miles of Plaintiff HalRob, Inc.'s place of business;

e. advertising any goods, services or other things offered by any business offering bagels, other than Plaintiff HalRob, Inc.'s business, within four (4) miles of Plaintiff HalRob, Inc.'s place of business;

f. receiving any royalty payments from any business offering bagels, other than Plaintiff HalRob, Inc.'s business, within four (4) miles of Plaintiff HalRob, Inc.'s place of business;

g. disbursing, using or accruing interest on any royalty payments received from any business offering bagels, other than Plaintiff HalRob, Inc.'s business, within four (4) miles of Plaintiff HalRob, Inc.'s place of business;

h. authorizing and/or continuing to authorize any business offering bagels, other than Plaintiff HalRob, Inc.'s business, within four (4) miles of Plaintiff HalRob, Inc.'s place of business from displaying, using or otherwise profiting from any trademark of or sign for Defendants Manhattan Bagel Company, Inc. and/or Specialty Bakeries, Inc., including but not limited to "Manhattan Bagel," "Bagel Builders," and/or "New York Style Bagels";

i. disseminating any information about Plaintiff HalRob, Inc. to any person other than Defendants; and

j. requiring or authorizing any other business offering bagels within four (4) miles of Plaintiff HalRob, Inc.'s place of business to pay royalties to Defendants Manhattan Bagel Company, Inc. and/or Specialty Bakeries, Inc. at a percentage of gross revenues less than Plaintiff HalRob, Inc. is required to pay.

New Jersey Complaint ¶¶ 40, 42.

HalRob requests that the individuals Fiorentino, Guglielmo and Gerber, who are now employees and shareholders of Manhattan Bagel Company, be enjoined from:

a. working for, consulting with, being employed by or acting as officers, directors and/or agents for Defendants Manhattan Bagel Company, Inc. and/or Specialty Bakeries, Inc.;

b. having any ownership interest or right to obtain any ownership interest in Defendants Manhattan Bagel Company, Inc. and/or Specialty Bakeries, Inc.; and

c. having any financial or other interest in Defendants Manhattan Bagel Company, Inc. and/or Specialty Bakeries, Inc.

*Id.*

In addition, HalRob seeks to compel the individuals named above as well as Specialty Bakeries and Manhattan Bagel Company to:

a. disgorge to Plaintiff HalRob, Inc., the Court or its designee any royalties received from any business offering bagels within four (4) miles of Plaintiff HalRob, Inc.'s place of business; and

b. disgorge to Plaintiff HalRob, Inc., the Court or its designee any profits derived from the sale of goods, services or other things to any business offering bagels within four (4) miles of Plaintiff HalRob, Inc.'s place of business.

*Id.*

Finally, as required by New Jersey law, HalRob made the following certification:

Pursuant to Rule 4:5–1, it is hereby stated to the best of my knowledge or information and belief that the matter in controversy is not the subject of any other action pending in any other Court or of pending arbitration, *that no other action or arbitration proceeding is presently contemplated,* that no other parties need be joined in this action, and that the continuing obligation of each party to file and serve on all parties in the Court an amended certification if there is a change in the facts state [sic] in this original certification is recognized.

(emphasis added). The New Jersey Superior Court has refused to stay the action pending arbitration. A hearing on HalRob's request for a preliminary injunction seeking the relief detailed above is scheduled before the state court in Camden, New Jersey on April 21, 1997.[4]

---

**4.** The defendants in the New Jersey state court action (the franchisor plaintiffs here) are all citizens of New Jersey, while the plaintiffs (the Hal-Rob defendants here) are Pennsylvania citizens. Although diversity of citizenship exists in the New Jersey action, franchisor cannot remove the

In the meantime, on February 12, 1997, five days after the New Jersey action was instituted, the franchisor filed with this court a petition to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.[5] It claims that the issues in the New Jersey action are subject to, and can only be determined by, arbitration as set forth in the franchise agreement between the parties. The agreement specifically references the Federal Arbitration Act.

On March 26, 1997, this court entered an Order granting the petition to compel arbitration. It stated in relevant part:

> the petition of plaintiffs Specialty Bakeries, Inc., Rocco Fiorentino, Frank Guglielmo, John Gerber, Jr., and Manhattan Bagel Company, Inc. to compel arbitration is GRANTED without prejudice to the right of defendants, RobHal, Inc. and HalRob Management, Inc. to seek preliminary injunctive relief, pursuant to their franchise agreement, in the case of *Halrob, Inc. v. Manhattan Bagel Company*, Civil Action No. C1697 pending in the Superior Court of New Jersey, Camden County.

This court recognized that the parties' agreement permitted them to seek preliminary equitable relief under limited circumstances while pursuing arbitration. The court's Order, however, did not mean that a party had carte blanche to override the arbitration process to which it had contracted. We noted in our Order:

> The intent of such a provision is to prevent irreparable harm and preserve or reinstate the status quo pending completion of the arbitration. *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 812–14 (3d Cir.1989). The agreement recognizes that such relief may be necessary during the period while the arbitration is proceeding and before the arbitrator renders a final decision. Therefore, the arbitration should

proceed promptly and simultaneously with the New Jersey action.

On April 1, 1997, franchisor filed a motion for a temporary restraining order asking this court to enjoin HalRob from seeking the broad injunctive relief requested in the New Jersey action. At a conference with this court on April 2, 1997, we learned that Hal-Rob had not yet filed a demand for arbitration despite the court's March 26, 1997 order. This court then set a date of April 8, 1997, by which it must do so. HalRob finally complied with the court's Order on that date. With the agreement of HalRob, the franchisor converted its motion for a temporary restraining order into a motion for a preliminary injunction. The court held an evidentiary hearing on April 9, 1997.

## II

■ The franchisor contends that the judicial relief sought in the New Jersey lawsuit violates the franchise agreement because it far exceeds what their agreement permits. In analyzing whether to grant the franchisor's motion for a preliminary injunction to enjoin the New Jersey state court action, we must keep in mind that the parties contracted that "All disputes and claims relating to this Agreement . . . shall be settled by arbitration . . . in accordance with the Federal Arbitration Act." This statute evidences a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). There is a "strong presumption in favor of arbitration." *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir.1997). Any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941.

---

action to the federal court. Under 28 U.S.C. § 1441 in-state defendants are prohibited from doing so.

5. Title 9 U.S.C. § 4 states in relevant part:
   A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition

any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

The underlying dispute between the parties is clearly arbitrable. In fact, pursuant to this court's Order of March 26, 1997, HalRob has now moved, albeit belatedly, to arbitrate the matter. Both plaintiffs and defendants now concur that an arbitrator will make the final decision to resolve the controversy on the merits. Nonetheless, HalRob claims it has the contractual right to be in the New Jersey Superior Court. It relies on the language of the franchise agreement which specifically allows the parties to apply for a preliminary injunction "to safeguard and protect our interest prior to the filing of any arbitration proceeding or pending the trial or handing down of a decision or award pursuant to any arbitration proceeding." The narrow purpose for such a provision is manifest. The parties recognized that the arbitration process, including selection of an arbitrator, the hearing, and the rendering of an award, can sometimes take an extended period of time. An arbitrator is simply not available on short notice to deal quickly with an emergency situation which might arise. Nor can an arbitrator usually grant a restraining order or a preliminary injunction to prevent irreparable harm. A court, on the other hand, is equipped to provide "temporary," "preliminary," or "emergency" relief on short notice. Thus, the "preliminary relief" paragraph of the parties' agreement was designed to fill a void in the arbitration process.[6]

While the franchise agreement permits an application for judicial relief prior to the demand for arbitration, it does not mean that the aggrieved party may delay in setting the arbitration in motion. The final decision is still in the hands of the arbitrator. Moreover, arbitration is designed to avoid delay and expense as well as prolonged court proceedings. The clear purpose of the parties' contractual provision allowing resort to a court of equity is to furnish a mechanism to preserve or to restore the status quo until the arbitrator has an opportunity to resolve the matter. *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir.1990). The parties'

franchise agreement allows for limited judicial intervention so that the agreed-to arbitration, favored under federal law, is not "eviscerated." *Id.* at 1053–54. The "preliminary relief" provision of the contract is designed to aid, not thwart, the arbitration process so that it does not become a "hollow formality." *Id.* at 1053. Here HalRob impeded the process by its unreasonable delay of some 60 days in seeking arbitration after it initiated the state court suit.

Turning to HalRob's complaint in the New Jersey Superior Court, it is clear that the broad judicial relief sought far exceeds what is written into the franchise agreement. HalRob is seeking expansive redress, including a permanent injunction and damages. Under what it claimed at the evidentiary hearing before us to be the rubric of preliminary injunctive relief, it prays, among other things, to enjoin the franchisor from having any interest in three other Manhattan Bagel franchises within four miles of Broomall and from selling any bagels or providing any services whatsoever to any of these franchises. Two of these bagel shops existed before HalRob entered into its relationship with Specialty Bakeries in 1995. The third opened for business in June, 1996, some seven months prior to the filing of the New Jersey action. HalRob also would require these small businesses to remove their Manhattan Bagel signs immediately and to prohibit Manhattan Bagel Company from receiving royalties from them. HalRob even seeks to compel the franchisor preliminarily to "disgorge" royalties paid by those other franchisees within four miles of Broomall and to pay the royalties over to HalRob instead. Finally, HalRob would have the court preliminarily enjoin the three individuals, who are employees and shareholders of Manhattan Bagel Company, from working for the company and from having any financial interest in it. On the other hand, HalRob presented no evidence that it is in immediate danger of closing its doors in Broomall unless a preliminary injunction of this magnitude is granted in its favor.

---

**6.** Even in the absence of this preliminary injunction provision, HalRob, at least in this circuit, would be entitled to a preliminary injunction to maintain the status quo pending the arbitrator's decision. *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir.1989).

What HalRob seeks in the New Jersey action is not the type of judicial relief contemplated by the franchise agreement. Nor is it the stuff of preliminary or temporary injunctions generally. Such wide-ranging relief would completely upset, rather than maintain or restore, the status quo. If HalRob had its way, even before the arbitrator made his or her award, the three named employees of Manhattan Bagel Company would be thrown out of work, with no income. Other Manhattan Bagel Company franchisees, who are small business people in the area of Broomall, Pennsylvania, would also be put out of business. This result would radically change the status quo long existing prior to the filing of the state court litigation. Should the arbitrator rule in a manner contrary to the state court, the harm done would be enormous. It could never really be cured. We are faced with a state court that is preparing to move forward within a few days. HalRob's thrust before the New Jersey court has the effect of impeding, if not undermining, the arbitration process as expressed in the parties' franchise agreement. The parties should have only one bite at the apple—or, in this case, at the bagel. That bite should be before the arbitrator, not a court. The role of decision maker belongs to the former, not the latter.

■ To the extent that HalRob seeks to prevent any threatened change in the current status quo, it may, of course, seek temporary judicial relief. For example, if HalRob has evidence that franchisor intends to open another Manhattan Bagel store within a four mile radius of Broomall, Pennsylvania, nothing herein prohibits it from seeking a preliminary injunction to restrain such activity pending completion of the arbitration if it would suffer immediate and irreparable harm. Any right to such relief, however, is quite limited and must be designed to protect the functioning of the arbitration only, not to frustrate it.

The Court of Appeals in *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir.1989) has held that a court may grant a preliminary injunction to preserve or restore the status quo so that the arbitration process may proceed unfettered, even when the parties' arbitration agreement does not contain a provision authorizing interim injunctive relief. In that case, Ortho, a drug marketer, sought a preliminary injunction to maintain the status quo pending arbitration, in its dispute with defendant Amgen, the drug manufacturer. *Id.* at 807–08. This injunction, among other things, required Amgen to continue to cooperate with Ortho in making filings with the Food and Drug Administration. *Id.* at 809. The court cautioned, however, that the four prong test for a preliminary injunction must be met in this as in any other circumstance. *Id.* at 812–13. Thus, the franchisor must establish: (1) reasonable probability of success on the merits; (2) irreparable harm if relief is not granted to prevent a change in the status quo; (3) possibility of harm to third parties from the grant or denial of the injunction; and (4) the public interest. *Id.*

■ The franchisor has met all four prongs. It has demonstrated a reasonable probability of success on the merits, that is, that HalRob's resort to the New Jersey state court violates the arbitration provision of the parties' franchise agreement. Franchisor has also established that it will be irreparably harmed unless we enter a preliminary injunction. Interference with the functioning of the arbitration proceeding constitutes irreparable harm. Moreover, the harm to franchisor, including the individual plaintiffs, in not granting the preliminary injunction clearly outweighs the harm to HalRob in granting the requested relief. Third parties, those Manhattan Bagel Company franchisees who would be forced to close at least temporarily, would also be irreparably harmed. Finally, the public interest is served by preserving the integrity of the arbitration process under the Federal Arbitration Act.

The franchisor has established its right to a preliminary injunction to preserve the status quo and to prevent any interference with the arbitration to which the parties consented in their franchise agreement.

### III

■ HalRob argues, however, that there is still a significant hole in the franchisor's

case. HalRob contends that this court is barred because of the federal Anti–Injunction Act from issuing an injunction to interfere with or restrain a state court action. This Act states:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The purpose of this statute is to recognize the "fundamental constitutional independence of the states and their courts" and "to prevent needless friction" between them and the federal courts. *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970); *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 537 (1940). The Act may not be avoided by addressing the injunction to the parties, rather than to the state court. *Atlantic Coast*, 398 U.S. at 287, 90 S.Ct. at 1743. Thus, this court may not enjoin any portion of the New Jersey proceeding or the parties to it unless our order falls within one of the three exceptions of the Anti–Injunction Act.

The second exception, which allows this court to grant an injunction "where necessary in aid of its jurisdiction" is available and applicable in the present circumstances. Although this exception previously applied only to *in rem* proceedings, it has since been expanded to include situations "where the federal court has reached a judgment, but retains jurisdiction over the action to supervise the implementation of its order." *In re Pickup Truck Fuel Tank Prod. Liab. Litig.*, MDL No. 961, 1996 WL 683785, at *10 (E.D.Pa. Nov.25, 1996) (Yohn, J.); *accord United States v. District of Columbia*, 654 F.2d 802, 809 n. 16 (D.C.Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981).

In our Order dated March 26, 1997, we "ORDERED that this court will retain jurisdiction until further order of court, pending completion of the arbitration proceeding." As such, we retained jurisdiction "to supervise implementation of [our] order." *In re Pickup*, 1996 WL 683785, at *10. To allow HalRob to proceed to a preliminary injunction hearing in the state court seeking relief far beyond what the parties contemplated in that forum would eviscerate the arbitration process and make it a "hollow formality," with needless expense to all concerned. We do not have to wait until the state court acts. *See District of Columbia*, 654 F.2d at 810. While the Supreme Court has not passed upon the applicability of the Anti–Injunction Act in the arbitration context, it has observed, "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland Corp. v. Keating*, 465 U.S. 1, 7, 104 S.Ct. 852, 856, 79 L.Ed.2d 1 (1984); *see Moses H. Cone*, 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32.

█ We are sensitive to notions of federalism and comity. Yet, the integrity of arbitration under the Federal Arbitration Act constitutes an important federal policy. We do not believe that a contracting party or a state court may act in any way to undercut that policy, where as here a federal court order compelling arbitration has been issued. A preliminary injunction restraining the HalRob from proceeding in state court is necessary in aid of our jurisdiction so as to preserve the integrity of this arbitration process. Otherwise, HalRob can obtain full and complete injunctive relief and money damages in the state court, as it requests in its complaint there. Little or nothing would be left for the arbitrator.

Accordingly, we enjoin HalRob from proceeding in the New Jersey Superior Court to upset the status quo as it existed on February 7, 1997, pending the decision of the arbitrator. *See Snap–On Tools Corp. v. Vetter*, 838 F.Supp. 468, 473 (D.Mont.1993). *See also Roodveldt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 585 F.Supp. 770, 782–84 (E.D.Pa.1984) (Cahn, C.J.). As we stated in our March 26, 1997 Order, the parties are to move promptly to resolve their dispute through arbitration.

## PRELIMINARY INJUNCTION

AND NOW, this 15th day of April, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the defendants HalRob, Inc., RobHal Management, Inc., and their officers, agents, servants, employees, and attorneys are hereby PRELIMINARILY ENJOINED, pending a decision by the arbitrator appointed pursuant to the parties' franchise agreement, from seeking monetary damages, permanent injunctive relief, or any form of preliminary or other relief (except as stated below) against plaintiffs Specialty Bakeries, Inc., Rocco Fiorentino, Frank J. Guglielmo, John E. Gerber, Jr., or Manhattan Bagel Company, Inc. in the case of *Halrob, Inc., v. Manhattan Bagel Company, Inc.,* Civil Action No. C1697, pending in the Superior Court of New Jersey, Camden County, Chancery Division ("New Jersey action").

This preliminary injunction, however, shall not prevent parties to the New Jersey action from seeking preliminary injunctive relief only, pending a decision by the above-referenced arbitrator, against Specialty Bakeries, Inc., Rocco Fiorentino, Frank J. Guglielmo, John E. Gerber, Jr., or Manhattan Bagel Company, Inc. to prevent them or any of them from making any impending material change in the status quo as it existed as of February 7, 1997. An impending material change is one that would eviscerate the arbitration process.

The plaintiffs shall post a bond in the amount of $15,000.