**CENTRAL JERSEY FREIGHTLINER, INC., and Robert Pezzolla, individually, Plaintiffs,**

v.

**FREIGHTLINER CORP., Defendant.**

**No. CIV.A.97–5244 (JCL).**

United States District Court, D. New Jersey.

Dec. 3, 1997.

Brian L. Baker, Warshaw & Barnes, Red Bank, NJ, for Plaintiffs.

Raymond T. Lyons, Connell, Foley & Geiser, Roseland, NJ, for Defendant.

**OPINION**

LIFLAND, District Judge.

Presently before the Court are: (1) a motion by plaintiffs, Central Jersey Freightliner, Inc. (hereinafter "CJF") and its President and sole shareholder Robert Pezzolla· (hereinafter "Pezzolla") (hereinafter collectively "plaintiffs"), for a preliminary injunction enjoining defendant, Freightliner Corp. (hereinafter "defendant") from terminating three franchise agreements and (2) a cross-motion by defendant to dismiss part of the complaint, to compel arbitration of certain claims and to stay proceedings in this Court pending arbitration, and to dismiss Pezzolla as a party to the action. For the reasons set forth herein, plaintiffs' motion for a preliminary injunction is denied. Defendant's cross-motion to dismiss part of the complaint is denied. Defendant's cross-motion to compel arbitration and to stay proceedings pending arbitration is granted. Defendant's cross-motion to dismiss Pezzolla is granted.

*BACKGROUND*

On October 24, 1997, plaintiffs filed a complaint commencing this action. The complaint alleges violations of the New Jersey Franchise Practices Act (hereinafter the "NJFPA"), the New Jersey Antitrust Act, breach of contract and various economic torts arising out of defendant's threatened termination of three franchise agreements effective November 28, 1997. On the same day they filed the complaint, plaintiffs filed an *ex parte* application for an order to show cause and temporary restraining order enjoining defendant from terminating the franchise agreements. The Court denied the requested relief finding that plaintiffs had failed to establish any urgency which would warrant imposition of temporary restraints. The Court further directed plaintiffs to file a motion for a preliminary injunction by October 31, 1997 according to standard motion practice, and scheduled a return date of November 24, 1997.

On October 31, 1997, plaintiffs filed their motion for a preliminary injunction. At issue are three franchise agreements: (1) the Heavy Duty Dealer Sales and Service Agreement (hereinafter the "Heavy Duty Franchise"); (2) the Medium Duty Dealer Sales and Service Agreement (hereinafter the "Medium Duty Franchise") and (3) the Century Class Franchise. The following allegations give rise to the instant dispute.

In 1991, plaintiffs entered into the Heavy Duty and Medium Duty franchises with defendant. Plaintiffs allege that in June of 1996 defendant "compelled and pressured" them to enter into the Century Class fran-

chise agreement by intimating that the Heavy and Medium Duty franchises would suffer otherwise. Verified Complaint, at ¶¶ 11, 14. All three franchises authorize CJF to purchase and sell certain Freightliner trucks in specified territories. Under the various franchise agreements, CJF is required, *inter alia*, to purchase a certain number of vehicles, to maintain a certain number of vehicles in stock at all times, and to maintain certain financing. All three franchises contain an arbitration clause. The Heavy Duty and Medium Duty franchises require any claim, controversy or dispute arising out of or relating to termination to be settled by binding arbitration, the sole and exclusive remedy, and further require a notice of demand for arbitration to be filed within 30 days of receipt of the notice of termination. The Century Class franchise requires arbitration of any claim or dispute relating to the franchise agreement and further requires a notice of demand for arbitration to be filed within 90 days of receipt of a termination notice. *See* Defendant's Brief, at 3–4; Declaration of Richard Lumelleau (hereinafter "Lumelleau Decl."), Ex. A at 20 (Medium Duty), Ex. B at 20 (Heavy Duty), Ex. C at 21 (Century Class).

On March 17, 1997, defendant served CJF with a notice threatening termination of the three franchise agreements. On March 19, 1997, CJF filed a chapter 11 bankruptcy petition. On September 23, 1997, the bankruptcy court dismissed CJF's case with CJF's consent. No plan of reorganization was ever confirmed. Shortly thereafter, CJF's lender, Freightliner Financial, repossessed much of CJF's new and used vehicle inventory. On September 25, 1997 defendant again served CJF with a notice of termination of the three franchise agreements, effective November 28, 1997.

On October 24, 1997, plaintiffs commenced the instant action. Plaintiffs allege that defendant engaged in a course of conduct designed to destroy CJF and to re-obtain the franchises. Plaintiffs do not dispute that CJF has failed to meet its obligations under the three franchise agreements. Plaintiffs allege, however, that defendant orchestrated CJF's breaches by unfairly competing with CJF, selling vehicles to other entities, manufacturing and delivering defective vehicles, stealing CJF customers, making misrepresentations, impairing CJF's customer relations, failing to perform its obligations under the franchise agreements, acting in bad faith, imposing unreasonable standards of performance and restricting the amount of profit CJF could make. Plaintiffs contend that as a result of defendant's conduct, CJF was unable to obtain required floor plan financing, meet the minimum hours of operation required, employ a sufficient number of employees, fulfill its sales and promotion requirements, purchase new inventory, retain purchased inventory and pay its open account to defendant. Plaintiffs further allege that as a result of defendant's conduct, CJF incurred substantial floor plan charges, became insolvent and was forced to incur substantial legal fees and tax obligations. Plaintiffs allege that defendant's conduct forced CJF into bankruptcy.

Plaintiffs argue that this Court should preliminarily enjoin defendant from terminating the franchises because "without the injunction, plaintiff will lose its franchises, cease to operate and will be unable to pay its creditors, which amount to several hundreds of thousands of dollars. Without the injunction, the impact will be suffered by CJF, Robert Pezzolla, but also by many members in our community. Without the injunction, plaintiffs will lose their livelihood. Without the injunction, plaintiffs will lose their investment." Plaintiffs' Brief in Support of Order to Show Cause, at 5. Plaintiffs further argue that there is a strong likelihood that plaintiffs will prevail on the merits, and that a preliminary injunction will not harm defendant because it was defendant who provoked the wrongful termination.

Lastly, plaintiffs argue that this dispute is not subject to arbitration because: (1) the New Jersey Franchise Practices Act (hereinafter the "NJFPA") prohibits arbitration of disputes between franchisors and franchisees and (2) defendant waived its right to seek enforcement of the arbitration provisions by failing to do so in CJF's bankruptcy.

On November 12, 1997, defendant filed a cross-motion to dismiss certain counts of the

complaint and to stay proceedings regarding the other claims. Defendant argues that: (1) the claims relating to the Heavy Duty and Medium Duty franchises must be dismissed because they were subject to mandatory arbitration and plaintiffs' failure to file demands to arbitrate within the 30–day time limit precludes any relief; (2) all claims arising out of or relating to the Century Class franchise are subject to mandatory arbitration for which there is still time to file a notice of intent to arbitrate, and thus those claims should be stayed pending arbitration; (3) any claims which are not subject to arbitration should be dismissed because CJF failed to disclose them in its schedules and statements filed in its chapter 11 bankruptcy case; and (4) Pezzolla lacks standing to sue because his injury is derivative of the harm to CJF.

## DISCUSSION

### CJF's Failure to Disclose Claims Against Defendant During Bankruptcy

CJF's failure to disclose its claims against defendant in its bankruptcy schedules or statements does not estop plaintiffs from asserting them now. Under Bankruptcy Code §§ 521 and 1125, a chapter 11 debtor's failure to disclose causes of action during the pendency of a bankruptcy case generally precludes litigation of those claims in the future under principles of equitable and judicial estoppel. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3d Cir.1988) ("[A] debtor must disclose any litigation likely to occur in the non-bankruptcy context. The result of a failure to disclose such claims triggers application of the doctrine of collateral estoppel, operating against a subsequent attempt to prosecute the actions"); *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.,* 989 F.2d 570, 571–72 (1st Cir.), *cert. denied,* 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993); *see* 11 U.S.C. §§ 521, 1125. The governing principles in these cases and the policy behind the debtor's disclosure obligation are threefold: (1) the reliance of creditors on the debtor's representations; (2) the need for finality because an order confirming a plan is an adjudication of claims on the merits which binds

the debtor and creditors; and (3) protection against a debtor playing "fast and loose" against the court and its creditors. Significantly, all of the cases barring litigation of nondisclosed claims did so where a plan of reorganization had been confirmed.

The preclusive effect of a debtor's failure to disclose is decidedly less clear where no plan was confirmed in the debtor's bankruptcy case. Defendant has not cited, and the Court's research has not yielded, any authority addressing nondisclosure in the context of a dismissal prior to confirmation.

The principles behind the Code and case law do not favor application of estoppel to bar litigation of nondisclosed claims in such a circumstance. This is true for two reasons. First, under the Bankruptcy Code, a debtor retains the right to amend its schedules and statements up until confirmation of a plan. *See Fed. R. Bankr.P.* 1009. Absent confirmation of a plan, there is no definitive proof that a debtor would not have disclosed its causes of action before an order of confirmation. The possibility that the debtor would have amended cannot be overlooked especially where, as here, the bankruptcy case was voluntarily dismissed in its early stages. Second, absent a confirmed plan, it would be difficult for a creditor to demonstrate any real detrimental reliance on the debtor's nondisclosure. While a plan fixes parties' rights and obligations, dismissal of a bankruptcy case essentially restores the parties to the position they assumed prepetition. *See* Bankruptcy Code § 349 (addressing effect of dismissal).

These principles, when applied to the case at bar, militate against dismissal of the nondisclosed claims. While CJF may have had numerous opportunities to disclose its causes of action, no plan was ever confirmed. CJF's bankruptcy case was voluntarily dismissed six months after filing and defendant has provided no proof that CJF would not have amended its schedules and statements to disclose the claims. Defendant argues that it entered into various consent agreements with CJF during CJF's bankruptcy case, but that it would not have done so had defendant known of CJF's potential claims. However, defendant has offered no evidence to suggest

that the bankruptcy court would have denied the relief CJF sought absent defendant's consent. Accordingly, defendant's motion to dismiss the nondisclosed claims is denied.

*Court's Authority to Grant Preliminary Injunction Notwithstanding Arbitration Clauses*

■■ The parties' agreement to submit their disputes to arbitration does not preclude this Court from granting a preliminary injunction to preserve or restore the status quo, provided that the moving party satisfies the standards for preliminary injunctive relief. *Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 882 F.2d 806, 812 (3d Cir.1989); *Specialty Bakeries, Inc. v. RobHal, Inc.,* 961 F.Supp. 822, 829 (E.D.Pa.), *aff'd,* 129 F.3d 726 (3d Cir.1997). An injunction is an extraordinary remedy which should only be granted in limited circumstances. *AT & T v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1426–27 (3d Cir.1994). A court should issue an injunction only where the moving party produces evidence to establish that the following four factors favor preliminary relief: (1) the likelihood plaintiff will prevail on the merits; (2) the extent to which plaintiff is being irreparably harmed by the conduct at issue; (3) the extent to which the non-moving party will suffer harm if the injunction is granted; and (4) the public interest. *New Jersey Hosp. Assoc. v. Waldman,* 73 F.3d 509 (3d Cir.1995); *Barclays Business Credit, Inc. v. Four Winds Plaza Partnership,* 938 F.Supp. 304, 307 (D.Vi.1996).

■ The NJFPA expressly authorizes injunctive relief "where appropriate." N.J. Stat. Ann. 56:10–10 ("Any franchisee may bring an action against its franchisor for violation of this act...and, where appropriate, shall be entitled to injunctive relief."). The NJFPA is applicable to the three franchises in the case at bar because: (1) all three agreements require CJF to establish and maintain a place of business in New Jersey; (2) gross sales under the agreements for the twelve months preceding this action exceeded $35,000; and (3) 100% of CJF's gross sales are derived from the three franchises. *See* N.J. Stat. Ann. 56:10–4; Lumelleau Decl., Ex. A at 2, 3, 5 (Medium Duty), Ex. B at 2, 3, 5 (Heavy Duty), Ex. C at 2, 3 (Century Class).

*Plaintiffs' Entitlement to Preliminary Injunctive Relief*

■■ A preliminary injunction is not appropriate in the instant case because plaintiffs have failed to provide sufficient evidence that the above mentioned factors favor relief. First, plaintiffs have failed to establish a probability of success in the litigation. To establish a likelihood of success on the merits, the moving party need not demonstrate that its entitlement to a final decision after trial is free of doubt. Rather, the moving party must demonstrate a "reasonable probability of eventual success in the litigation." *Barclays,* 938 F.Supp. at 307. Plaintiffs argue that they will likely prevail in this action because defendant violated several provisions of the NJFPA. Specifically, plaintiffs argue that defendant violated NJFPA § 56:10–5 which prohibits termination of franchise agreements without good cause, which is limited to a franchisee's failure to "substantially comply with those requirements imposed...by the franchisor." NJFPA § 56:10–10. Plaintiffs concede that CJF failed to comply with many of the franchise requirements as set forth in defendant's termination letter, but contend that defendant orchestrated CJF's breaches. However, plaintiffs have submitted no evidence to support that contention. Absent such proof and given plaintiffs' concession, plaintiffs cannot establish a likelihood of success on the merits of that claim.

Plaintiffs also contend that defendant violated NJFPA § 56:10–7(e) which prohibits a franchisor from imposing unreasonable standards of performance upon a franchisee. Plaintiffs contend that defendant imposed unreasonable performance standards by: (1) requiring CJF to remain open for business 24 hours a day, seven days a week and (2) requiring CJF to maintain specific inventory levels, sales quotas and financing. Plaintiffs have cited no authority to support their contention that such standards are unreasonable within the meaning of the NJFPA. Plaintiffs' mere allegations are insufficient to es-

tablish a likelihood of success on the merits of that claim.

Plaintiffs further contend that defendant violated NJFPA § 56:10–27 which prohibits a motor vehicle franchisor from selling motor vehicles to a consumer other than through a motor vehicle franchisee. Plaintiffs allege that defendant wrongfully competed with CJF by selling vehicles to CJF customers, stole CJF customers and interfered with CJF's profits. Plaintiffs have submitted no evidence to support that contention. Absent such proof, plaintiffs cannot establish a likelihood of success on the merits of that claim.

Plaintiffs allege that defendant is liable to CJF pursuant to NJFPA § 56:10–14 which requires motor vehicle franchisors to indemnify motor vehicle franchisees for claims and damages resulting from the franchisor's provision of defective vehicles. Plaintiffs argue that defendant is liable for damages that CJF incurred as a result of defendant's provision of defective parts and vehicles. However, plaintiffs have submitted no evidence to support their contention that the vehicles provided by defendant were defective, or to substantiate the damages incurred. Absent such proof, plaintiffs cannot establish a likelihood of success on the merits of that claim.

■ Plaintiffs have also failed to establish that CJF will be irreparably harmed absent injunctive relief. To satisfy the irreparable harm element, the moving party must make a clear showing of immediate, irreparable injury or a presently existing threat. *Barclays*, 938 F.Supp. at 307. The Court of Appeals for the Third Circuit has consistently held that financial or economic injury does not constitute irreparable harm necessary to support an award of injunctive relief. *See Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994) ("In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial.' Economic loss does not constitute irreparable harm...."); *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir.1989) ("Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate."). Plaintiffs argue that "without an injunction, CJF, its employees and Robert Pezzolla, will lose

their livelihood, will lose their investment, and will lose a valuable and marketable asset, worth in excess of one million dollars." Plaintiffs' Brief, at 6. Plaintiffs also allege that termination of the franchises will devalue CJF's good will. These alleged injuries are compensable with money damages and therefore do not constitute irreparable harm necessary to sustain an award of injunctive relief.

■ Plaintiffs have also failed to establish that an award of injunctive relief would not detrimentally impact defendant. Plaintiffs argue that defendant will not be harmed by an injunction because it was defendant who orchestrated plaintiffs' breaches of the various franchise terms. Other than advancing these allegations, plaintiffs do not offer any evidence or substantive legal argument in support of their contention, and thus cannot satisfy the third prong of the analysis.

■ With regard to the public interest, plaintiffs correctly argue that the NJFPA evinces a strong public policy of protecting franchisees from the disparate bargaining power between franchisors and franchisees. Plaintiffs therefore argue that the public interest favors an award of injunctive relief. Absent any admissible evidence that defendant has violated the NJFPA, the Court declines to find that an award of injunctive relief would serve the public interest. Accordingly, given the insufficiency of plaintiffs' proofs, the Court holds that plaintiffs have not met their burden under NJFPA § 56:10–10 and are not entitled to preliminary injunctive relief.

### The Arbitrability of Claims Covered by the NJFPA

All three franchise agreements require the parties to submit disputes arising out of or related to termination to binding arbitration as the sole and exclusive remedy. Plaintiffs have raised NJFPA § 56:10–7.3 as a bar to arbitration. Defendant does not address § 56:10–7.3, and in arguing for arbitration relies solely on the Federal Arbitration Act (hereinafter the "FAA"), 9 U.S.C. § 1.

■ As noted, the NJFPA applies to the parties' franchise agreements in the instant case. The NJFPA addresses the validity of arbitration clauses in franchise agreements and provides:

a. It shall be a violation of the "Franchise Practices Act"...for a motor vehicle franchisee to agree to a term or condition in a franchise...as a condition to the offer, grant or renewal of the franchise...which:

....

(3) Requires that disputes between the motor vehicle franchisor and motor vehicle franchisee to be submitted to arbitration or to any other binding alternate dispute resolution procedure; provided, however, that any franchise...may authorize the submission of a dispute to arbitration...if the motor vehicle franchisor and motor vehicle franchisee voluntarily agree to submit the dispute to arbitration...at the time the dispute arises.

b. For the purposes of this section, it shall be presumed that a motor vehicle franchisee has been required to agree to a term or condition in violation of this section...if the motor vehicle franchisee, at the time of the offer, grant or renewal of the franchise...is not offered the option of an identical franchise...without the term or condition proscribed in this section.

N.J. Stat. Ann. 56:10–7.3.[1]

■ The FAA, the federal substantive law governing arbitration, applies to arbitration clauses in any contract which involves interstate commerce and provides that a written agreement to arbitrate "in any...contract evidencing a transaction involving commerce...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* FAA, 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("The effect of this section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.");*Optopics Laboratories Corp. v. Nicholas*, 947 F.Supp. 817, 824 (D.N.J. 1996). The arbitrability of the disputes in the instant case is governed by the FAA because all three franchise agreements were executed between entities from Oregon and New Jersey and authorize a transfer of vehicles across state lines.

New Jersey courts have not ruled on the enforceability of arbitration clauses in franchise agreements subject to both the NJFPA and the FAA. However, in *Kubis & Perszyk Assocs., Inc. v. Sun Microsys., Inc.*, 146 N.J. 176, 193, 680 A.2d 618 (1996), the New Jersey Supreme Court considered the validity of a forum-selection clause in a franchise agreement under § 56:10–7.3 a(2), which prohibits forum-selection clauses in motor vehicle franchises. Though *Kubis* confined its analysis to forum-selection clauses under § 56:10–7.3 a(2), its extensive review of the legislative history and conditions prompting passage of the NJFPA informs this Court's view of New Jersey law as to the enforceability of the parties' arbitration provisions under § 56:10–7.3 a(3). The *Kubis* court held that forum-selection "clauses are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act." *Kubis*, 146 N.J. at 193, 680 A.2d 618. The court noted that § 56:10–7.3 a(2) expressly prohibits forum-selection clauses in motor vehicle franchise agreements, but stated that the Legislature would undoubtedly extend that prohibition to other types of franchises. *Id.* at 194, 680 A.2d 618.

---

**1.** The NJFPA defines "motor vehicle franchisor" as a franchisor engaged in the business of manufacturing or assembling new motor vehicles who will manufacture or assemble at least 10 new vehicles. The NJFPA defines "motor vehicle franchisee" as every franchisee actively engaged in the business of buying, selling or exchanging new motor vehicles and who has an established place of business. The NJFPA defines "motor vehicle franchise" as a franchise for the market-

ing of new motor vehicles. *Id.* § 56:10–13. Because the franchises grant CJF a right to purchase and re-sell new Freightliner trucks and defendant is in the business of manufacturing large quantities of new vehicles, CJF is a motor vehicle franchisee, defendant is a motor vehicle franchisor, and the agreements are motor vehicle franchises within the meaning of NJFPA § 56:10–13.

The court further held that forum-selection clauses

should not be enforced unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position. Evidence that the forum-selection clause was included as part of the standard franchise agreement, without more, is insufficient to overcome the presumption of invalidity. We anticipate that a franchisor could sustain its burden of proof by offering evidence of specific negotiations over the inclusion of the forum selection clause and that it was included in exchange for specific concessions to the franchisee. Absent such proof, or other similarly persuasive proof demonstrating that the forum-selection clause was not imposed on the franchisee against its will, a trial court should conclude that the presumption against the enforceability of forum-selection clauses in franchise agreements subject to the Act has not been overcome.

*Id.* at 195, 680 A.2d 618. In determining that forum-selection clauses were not reconcilable with the broad statutory protections afforded franchisees under the NJFPA, the court reviewed the extensive legislative history of § 56:10–7.3 and the conditions which prompted its passage. The court emphasized the legislature's concern for the disparity in bargaining power between franchisors and franchisees and the unwillingness of franchisors to negotiate in good faith, which often result in unconscionable and unreasonable terms and conditions. The court noted that the NJFPA was enacted to close the gap in bargaining power in the franchise relationship and to afford the parties prompt judicial relief.

After reviewing the legislative history of the NJFPA, the court reviewed the United States Supreme Court decision in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), holding that forum-selection clauses should be enforced unless "enforcement is shown to be unreasonable under the circumstances" or where enforcement would contravene public policy. *Id.* at 187, 680 A.2d 618 (citing *Bremen,* 407 U.S. at 10, 12, 92 S.Ct. at 1913, 1914) The New Jersey Supreme Court found that enforcement of forum-selection clauses in franchise agreements would contravene public policy by substantially undermining the protections the state legislature intended for franchisees. *Id.* at 192–93, 680 A.2d 618. The court noted that in the context of wrongful termination claims, forum-selection clauses are particularly detrimental to franchisees because the franchisees are deprived of the right to seek prompt injunctive relief from a New Jersey court and are often forced to incur substantial cost to assert their rights in an unfamiliar and distant forum. *Id.* at 194, 680 A.2d 618. Thus, the *Kubis* court held that forum-selection clauses in franchise agreements fell within the public policy exception to enforceability announced in *Bremen* and were therefore unenforceable:

The strongest single factor weighing against enforcement of forum-selection clauses in franchise agreements is the Legislature's avowed purpose, plainly expressed in the Franchise Act, to level the playing field for New Jersey franchisees and prevent their exploitation by franchisors with superior economic resources. The general enforcement of forum-selection clauses in franchise agreements would frustrate that legislative purpose, and substantially circumvent the public policy underlying the Franchise Act.

*Id.* at 195, 680 A.2d 618.

Though the legislative policies behind § 56:10–7.3 a(2) considered in *Kubis* also prompted passage of § 56:10–7.3 a(3), the FAA and a trilogy of United States Supreme Court decisions issued before the enactment of the NJFPA raise a question concerning the constitutionality of § 56:10–7.3 a(3) under the Supremacy Clause. U.S. Const. art. VI, cl. 2.

In *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* the Supreme Court considered a request to stay arbitration under the FAA pending disposition of an ongoing state court action. The Supreme Court emphasized that the FAA embodies a liberal federal policy favoring arbitration, notwithstanding any state substantive or procedural policies to the contrary. *Moses H. Cone*

*Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. at 941.

One year later in *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Court addressed the validity of a state statute which limited the enforceability of arbitration agreements. The Court held that a provision of the California Franchise Investment Law which required judicial adjudication of franchise claims and precluded enforceability of arbitration agreements conflicted with the FAA, and was therefore unconstitutional. *Id.* at 16, 104 S.Ct. at 861. The Court held that the state law was preempted by the FAA under the Supremacy Clause. *Id.* The Court emphasized that the FAA evinces a liberal federal policy favoring arbitration and withdrew the power of the states to require judicial adjudication of claims which the parties agreed to resolve by arbitration. *Id.* at 10, 16, 104 S.Ct. at 858, 861 ("In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."). Reviewing the legislative history of the FAA, the Court instructed that "the purpose of the [FAA] was to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or . . . by state courts or legislatures." *Id.* at 13, 104 S.Ct. at 859. The Court further noted that the FAA applies to contracts involving commerce and that an arbitration provision therein "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting FAA, 9 U.S.C. § 2). In invalidating the California law, the Court held that other than "the grounds as exist at law or in equity for the revocation of contracts," the FAA does not subject the enforceability of arbitration clauses to any additional limitations under state law. *Id.* at 11, 13, 104 S.Ct. at 858, 859 (reviewing the legislative history of the FAA and noting that it "contemplated a broad reach of the Act, unencumbered by state law constraints."). In holding that general contract defenses such as fraud could be invoked to avoid enforcement of an arbitration agreement, the Court concluded that the defense to arbitration found in the California law was not a ground for the revocation of any contract "but rather a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Law." *Id.* at n. 11. The Court rejected the argument that a state policy of providing special protection for franchisees can be recognized without undermining the basic purpose of the FAA. *Id.* The Court reasoned that acceptance of that argument would open the door for state legislatures to "wholly eviscerat[e] Congressional intent to place arbitration agreements 'upon the same footing as other contracts' simply by passing statutes such as the Franchise Investment Law." *Id.* The Court stated: "We have rejected this analysis because it is in conflict with the Arbitration Act and would permit states to override the declared policy favoring enforcement of arbitration agreements." *Id.*

In *Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), the United States Supreme Court again held that under the Supremacy Clause, the FAA preempted a provision of the California Labor Code which stated that wage collection actions could be judicially adjudicated notwithstanding parties' private agreements to arbitrate. The Court noted that Congress' preeminent concern in passing the FAA was to enforce private agreements between parties. *Id.* at 490, 107 S.Ct. at 2525–26. The Court reiterated its reasoning used in *Southland,* stating:

> In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. [The FAA] therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* at 489, 107 S.Ct. at 2525.

In *Alpert v. Alphagraphics Franchising, Inc.,* 731 F.Supp. 685 (D.N.J.1990), the court

considered the enforceability of an arbitration clause in a franchise agreement under a section of the NJFPA which made it illegal to require a franchisee to consent to a waiver, release, assignment, novation or estoppel which would relieve any person of liability under the NJFPA. The court rejected the argument that the arbitration clause operated as an impermissible waiver of a judicial forum in violation of the NJFPA. *Id.* at 688. The court held that the anti-waiver provision of the NJFPA does not render arbitration clauses unenforceable because an arbitration clause does not relieve a person of liability but rather determines the forum in which liability may be adjudicated. *Id.* Though the court neither mentioned nor addressed § 56:10–7.3 a(3), the court added that under *Southland,* a statutory provision which conflicts with the FAA is invalid under the Supremacy Clause. *Id.*

▇▇▇▇ Applying these principles to the instant case, the Court finds a clear conflict between the FAA and NJFPA § 56:10–7.3 a(3). While the New Jersey statute does not operate as a wholesale proscription of arbitration clauses in franchise agreements and creates only a presumption of invalidity, the statute clearly limits the enforceability of arbitration clauses by requiring, at the very least, that a franchisor prove that the franchisee was offered an identical agreement without the arbitration provision.[2] While the statute reflects a state policy of providing special protection for franchisees, the Supreme Court held that allowing states to protect franchisees by proscribing arbitration would open the door for state legislatures to "wholly eviscerat[e] Congressional intent to place arbitration agreements 'upon the same footing as other contracts' and would permit states to override the FAA's policy favoring enforcement of arbitration agreements." *Id.* Because the FAA was intended to foreclose state legislative attempts to limit the enforceability of arbitration agreements, and because NJFPA § 56:10–7.3 a(3) is just such an attempt, the Court holds that NJFPA

§ 56:10–7.3 a(3) violates the Supremacy Clause and is preempted by the FAA. Having so ruled, the Court further holds that, on this record, the arbitration clauses in the Heavy Duty, Medium Duty and Century Class franchises are enforceable.

*Timeliness of Arbitration Demands and Stay of Proceedings Pending Arbitration*

▇▇▇▇ The Court rejects defendant's argument that the claims related to the Heavy Duty and Medium Duty franchises must be dismissed because plaintiffs failed to file timely demands for arbitration. Questions concerning the timeliness of a demand for arbitration are to be determined by an arbitrator, not the Court. *Conticommodity Servs., Inc. v. Philipp & Lion,* 613 F.2d 1222, 1226 (2d Cir.1980); *Commerce Bank v. DiMaria Constr., Inc.,* 300 N.J.Super. 9, 14, 692 A.2d 54, 57 (App.Div.1997) (quotation omitted) ("[A]ny question as to whether a party has satisfied the procedural preconditions of arbitration, such as the timeliness of a demand for arbitration,—sometimes referred to as 'procedural arbitrability'—generally should be decided by arbitrators rather than a court.").

▇▇▇▇ With regard to the claims relating to the Century Class franchise, there is still time for plaintiffs to file a demand for arbitration pursuant to the parties' agreement, which requires a notice of intent to arbitrate to be filed within 90 days of receipt of a termination notice. The Court therefore assumes that plaintiffs will file such a demand by December 24, 1997. *See* FAA, 9 U.S.C. § 4 (authorizing court to compel arbitration). Given the factual intertwining of plaintiff's arbitrable and non-arbitrable claims, the Court, in its discretion, will stay litigation of the non-arbitrable claims pending arbitration. *See* FAA, 9 U.S.C. § 3 (authorizing court to stay proceedings pending arbitration where any issue in suit is referable to arbitration); *Optopics,* 947 F.Supp. at 824; *Allied Fire & Safety Equip. Co. v. Dick Enter.,*

---

2. The New Jersey Supreme Court's holding in *Kubis,* requiring a franchisor to prove that a presumptively invalid forum-selection clause was fairly negotiated and included in exchange for specific concessions to the franchisee, raises the possibility that the court would impose those same additional burdens on a franchisor to overcome the presumption of invalidity with regard to an arbitration clause.

*Inc.*, 886 F.Supp. 491, 498 (E.D.Pa.1995) (holding that court has the discretion to stay proceedings pending arbitration where arbitrable claims predominate or where arbitrable claims will have some effect on non-arbitrable claims); *Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853, 876 (D.N.J.) ("The decision to stay litigation of non-arbitrable claims pending the outcome of arbitration is one left to the district court...as a matter of its discretion to control its docket."), *aff'd*, 970 F.2d 899 (3d Cir.1992).

*Defendant's Waiver of Right to Enforce Arbitration Provisions*

■■■■■ The Court rejects plaintiffs' argument that by failing to assert arbitrability as a defense to litigation of various claims during CJF's bankruptcy, defendant waived the right to enforce the arbitration provisions in the franchises. Given the liberal federal policy favoring arbitration, any doubts concerning the scope of arbitrable issues, including waiver, should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941–42. Though waiver may be inferred from a party's inconsistent litigation, it should not be lightly inferred, requires a showing of prejudice, and will normally be found only where the demand for arbitration follows long after commencement of the action where the parties have engaged in extensive discovery. *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir.1995). Waiver cannot be inferred from conduct relating to non-arbitrable issues. *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 862 (2d Cir. 1985).

■■■ Though plaintiffs contend that CJF and defendant litigated defendant's secured claim and cash collateral issues in the bankruptcy court, plaintiff has not established that the litigation involved matters arising out of or related to the termination of the Heavy Duty or Medium Duty franchises, the sole issues subject to arbitration under those agreements. Plaintiff has also failed to establish that the secured claim and cash collateral litigation fell within the scope of the Century Class arbitration clause. Though

the Century Class clause requires arbitration of all disputes relating to the franchise relationship, the agreement carves out an exception to arbitrability for claims related to CJF's trade indebtedness or CJF's failure to pay defendant. *See* Lumelleau Decl., Ex. C at 21. Litigation over defendant's secured claim and CJF's use of cash collateral relates to CJF's trade indebtedness and failure to pay. Accordingly, those issues fall within the exception to arbitrability. Therefore, defendant's litigation of those claims does not waive its right to enforce the arbitration clause in the instant case.

*Pezzolla's Standing*

■■■ Defendant argues that Pezzolla as the sole shareholder of CJF alleges only derivative harm and thus is not entitled to maintain this action in his own name or to "maintain an action and recover individually for alleged harm done only to [CJF.]" Plaintiffs contend that Pezzolla's injury is not derivative, but rather personal, because Pezzolla was a guarantor of the financing transactions and was injured by misrepresentations made by defendant. Notably, however, the complaint seeks only damages for the alleged injury to CJF. *See* Verified Complaint, at ¶ 142.

■■■ It is a well-established rule that "a shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagara Frontier Transportation Auth.*, 836 F.2d 731, 736 (2d Cir.1987) (citing cases); *Borkowski v. Fraternal Order of Police*, 155 F.R.D. 105, 113 (E.D.Pa.1994) (same). Therefore, Pezzolla lacks standing to bring suit as president and corporate shareholder to recover damages suffered by CJF. Accordingly, Pezzolla is dismissed as a party to this action.