**Richard D. KUNICA, Plaintiff,**

v.

**ST. JEAN FINANCIAL, INC. and Walter L. Rogers, Defendants.**

**No. 97 Civ 3804(RWS).**

United States District Court, S.D. New York.

Aug. 16, 1999.

344

Hartman Underhill & Brubaker LLP, Lancaster, PA, Stephen R. Luzan, of counsel, for plaintiff.

Baer Marks & Upham LLP, New York City, Neal S. Barlia, Jay L. Gottlieb, Alexander D. Widell, of counsel, for defendants.

## OPINION

SWEET, District Judge.

Plaintiff Richard D. Kunica ("Kunica") has moved: (1) pursuant to Local Rule 6.3 and Rule 59(e) of the Federal Rules of Civil Procedure for reconsideration of this Court's opinion of April 22, 1999 (the "Opinion") granting the motion of defendants St. Jean Financial, Inc. ("St.Jean") and Walter L. Rogers ("Rogers," and collectively the "Defendants") for summary

judgment and dismissing the complaint; (2) for an order, pursuant to 28 U.S.C. § 1447(c), requiring Defendants to pay Kunica costs and attorneys' fees incurred in this action from May 23, 1997; and (3) to remand this case to the Supreme Court of New York, County of New York. Defendant St. Jean has moved, pursuant to Fed. R.Civ.P. 59(e) for an order amending the judgment to dismiss and remand Kunica's state court claims against defendant Rogers.

For the reasons set forth below, St. Jean's motion is granted, and Kunica's motions are denied.

### The Parties

Kunica is a Canadian resident.

St. Jean is a Delaware corporation with a registered address in Wilmington, Delaware, and principal places of business in New York, New York and London, England.

According to the complaint, Rogers is a New York resident and was at all relevant times Director of St. Jean.

### Prior Proceedings and Facts

The facts and prior proceedings of this action are set forth in the prior opinions of the Court, familiarity with which is assumed. *See Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46 (S.D.N.Y.1999); *Kunica v. St. Jean Financial, Inc.*, 1998 WL 437153 (S.D.N.Y. August 3, 1998). Those facts and prior proceedings relevant to the instant motion are set forth below.

Kunica commenced this action in the Supreme Court of the State of New York, County of New York, by filing a Summons with Notice on March 27, 1997. On May 23, 1997, the Defendants removed the case to this Court on diversity grounds. Kunica filed the Complaint on October 31, 1997.

Defendants filed a motion to dismiss on December 22, 1997. Kunica then filed an amended complaint (the "First Amended Complaint") on January 30, 1998, and Defendants withdrew their motion to dismiss on February 23, 1998 by stipulation.

On March 6, 1998, Defendants filed a motion to dismiss this action, and to dismiss Kunica's claim for punitive damages. By Opinion and Order dated August 3, 1998, the Court granted the motion to dismiss plaintiff's claims as to breach of oral agreement, fraud and tortious interference with business relations, and dismissed Kunica's claim for punitive damages. Plaintiff's claims for breach of written agreement and promissory estoppel were sustained. *See Kunica*, 1998 WL 437153.

Defendants filed their motion for summary judgment on October 27, 1998. On April 22, 1999, the Court issued the Opinion granting summary judgment and dismissing the complaint.

Kunica filed the instant motions on May 17, 1999, and St. Jean filed its motion to amend the judgment on May 26, 1999. Submissions were received through June 23, 1999, at which time the motions were deemed fully submitted.

### *Discussion*

#### I. *Kunica's Motion for Reconsideration is Denied*

##### A. *Standard for Reconsideration*

Kunica brings this motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3. The standards governing Rule 59(e) and Local Rule 6.3 are the same. *See Candelaria v. Coughlin*, 155 F.R.D. 486, 490 (S.D.N.Y.1994); *Morser v. A.T. & T. Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y.1989).

Local Rule 6.3 provides in pertinent part: "There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Thus, to be entitled to reargument, Plaintiffs must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion. *See Ameritrust Co. Nat'l Ass'n v. Dew*, 151

F.R.D. 237 (S.D.N.Y.1993); *Fulani v. Brady*, 149 F.R.D. 501, 503 (S.D.N.Y.1993); *East Coast Novelty Co. v. City of New York*, 141 F.R.D. 245, 245 (S.D.N.Y.1992); *B.N.E. Swedbank, S.A. v. Banker*, 791 F.Supp. 1002, 1008 (S.D.N.Y.1992); *Novak v. National Broadcasting Co.*, 760 F.Supp. 47, 48 (S.D.N.Y.1991); *Ashley Meadows Farm Inc. v. American Horse Shows Ass'n*, 624 F.Supp. 856, 857 (S.D.N.Y. 1985).

 Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y. 1985). In deciding a Local Rule 6.3 motion, the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. *See Morser*, 715 F.Supp. at 517; *Korwek v. Hunt*, 649 F.Supp. 1547, 1548 (S.D.N.Y. 1986). Therefore, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, No. 86 Civ. 6447, 1989 WL 162315, at * 3 (S.D.N.Y.1989). The decision to grant or deny a motion for reargument is within the sound discretion of the district court. *See Schaffer v. Soros*, No. 92 Civ. 1233, 1994 WL 592891 (S.D.N.Y. Oct. 31, 1994).

The crux of Kunica's motion is that this Court lacked subject matter jurisdiction over this case at the time of final judgment and thus, the judgment must be vacated and this case remanded to state court. However, Kunica's assertion that the Opinion relies on "clear errors" of fact and law will be addressed briefly.

### B. *The Court Did Not Overlook Factual Matters or Controlling Authority*

#### 1. *Factual Matters*

Kunica asserts that the Opinion contains four "errors of fact." First, Kunica claims that Sci–O–Tech, Inc. ("Sci–O–Tech") was not aware of its potential claims against Defendants at the time it filed its Schedules of Assets and Liabilities (the "Schedules") with the bankruptcy court at the outset of its bankruptcy case in September, 1994.[1] According to Kunica, all the persons who had knowledge of the claims and the letter agreement dated May 7, 1994, had left Sci–O–Tech and were not in any way responsible for the preparation or content of the bankruptcy schedules. Thus, Kunica concludes that his knowledge should not be imputed to the new owners and operations of Sci–O–Tech, and that "[I]ntentional concealment of the claims by [Sci–O–Tech's president] Tyler Scheuler and [Sci–O–Tech's controller] Kenneth Chubb has not been shown by the Defendants." (Plaintiff's Brief at 8).

This argument was not advanced on the underlying motion. Rather, Kunica's position was that the potential claims against Defendants (the "Claims") were adequately disclosed. Further, while Kenneth Chubb may have signed the Schedules, he did so on behalf of Sci–O–Tech, which as evidenced by the May 7 letter agreement, knew about and intended to pursue the Claims. Moreover, even if Kunica's knowledge of the claims was not imputed to the "new management" at the time the Schedules were filed, by plaintiff's own admission the claims "were openly discussed and

---

1. The Opinion found that: "It would appear that Sci–O–Tech was aware of the Claims since in a pre-bankruptcy letter agreement executed by Sci–O–Tech on May 7, 1994, with an investor group who was going to run the operations of Sci–O–Tech and find a lender to take out Fremont's position, Kunica, as the sole shareholder of Sci–O–Tech, contractually required the investor group to 'engage counsel selected by [the investor group] for the purpose of commencing legal action against St. Jean Financial, Walter Rogers and such other appropriate parties as said counsel may determine for breach of the April 4, 1994 agreement entered into between Sci–O–Tech and St. Jean.' Accordingly, Sci–O–Tech did not meet its affirmative obligation under 11 U.S.C. § 521(1) to disclose to the bankruptcy court all of the assets that belonged to its bankruptcy estate." *Kunica*, 233 B.R. at 56.

fully disclosed" to Tyler Scheuler ("Scheuler") on February 25, 1995, prior to the bankruptcy court hearing on Sci–O–Tech's Original Disclosure Statement. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 3). Thus, Scheuler, the individual who Kunica avers controlled Sci–O–Tech, had knowledge of the Claims at least as early as February, 1995, but failed to disclose them to Sci–O–Tech's creditors, the bankruptcy court, or the U.S. Trustee at any time thereafter.

Second, Kunica submits that the Court wrongly concluded that Sci–O–Tech's failure to disclose its assignment of the Claims to plaintiff did not violate Bankruptcy Rules 2002(a)(2) or 9019(a) because the assignment was not effectuated until after Sci–O–Tech's bankruptcy case was dismissed. The Opinion states that even if the Claims, and Sci–O–Tech's agreement to assign them to Kunica, were disclosed to counsel for the unsecured creditors committee, such disclosure "is not valid and adequate disclosure to the creditors at large." *Kunica*, 233 B.R. at 57. While the Court also noted that such nondisclosure (also) violated Bankruptcy Rules 2002(a) and 9019(a), it was Sci–O–Tech's failure to disclose the Claims to creditors, and not any other Bankruptcy Rule violation, that formed the basis of the Court's decision.[2]

Third, Kunica contends that he has "newly discovered evidence" demonstrating that counsel for the unsecured creditor's committee received a schedule disclosing Sci–O–Tech's Claims the day before the bankruptcy court approved Sci–O–Tech's sale of its assets to Lumex Bed Systems, Inc. Even assuming this fact is true, however, it is legally irrelevant as the Court has already held that disclosure to counsel for the creditors' committee does not constitute disclosure to the creditors at large. *See id.* Moreover, Kunica has conceded that the schedule was never provided to the bankruptcy court or the U.S. Trustee, and, as noted in the Opinion, there is no evidence that the schedule was submitted to Sci–O–Tech's creditors at large. *See id.* At 57.

■ Fourth, based on the allegations contained in an affidavit first submitted in connection with plaintiff's instant motion for reconsideration,[3] Kunica urges that he is a third-party beneficiary of Sci–O–Tech's claims. A motion for reconsideration is not the proper avenue for the submission of new material. *See* Local Rule 6.3 (in connection with a motion for reconsideration, "[n]o affidavits may be filed by any party unless directed by the court."); *First Amer. Corp. v. Price Waterhouse LLP*, No. M8–85, 1999 WL 148460 (S.D.N.Y. March 18, 1999). Accordingly, the affidavit will not be considered here.[4]

### 2. *Controlling Decisions*

Kunica claims that the Court's finding that ". . . independent research has not revealed any authority dealing with the effect of dismissal on non-disclosed claims," *see Kunica*, 233 B.R. at 54, is incorrect and urges the Court to follow the approach adopted by the court in *Central Jersey Freightliner, Inc. v. Freightliner Corp.*, 987 F.Supp. 289 (D.N.J.) which held that "[a]bsent confirmation of a plan, there

---

**2.** Indeed, a violation of Bankruptcy Rules 2002(a) and 9019(a) is not a prerequisite to finding a lack of standing or judicial estoppel.

**3.** Kunica claims that he intended to deliver said affidavit to the Court at the February 3, 1999 oral argument on the underlying summary judgment motion.

**4.** Assuming *arguendo* that the affidavit contained legally relevant facts demonstrating that Defendants intended to confer a benefit upon Kunica individually, the Court has already ruled that Kunica is barred from claiming third-party beneficiary status because "Sci–O–Tech has the right to and (through Kunica) is simultaneously pursuing, on its own behalf, the same claims that Kunica purports to bring individually." *Kunica*, 233 B.R. at 61.

is no definitive proof that a debtor would not have disclosed its causes of action before an order of confirmation...." These principles, when applied to the case at bar, militate against dismissal of the nondisclosed claims. As noted in the Opinion, on the underlying motion neither party cited any authority dealing with non-disclosure in the context of a dismissal prior to confirmation. As *Central Jersey Freightliner* was not put before the Court on the underlying motion for summary judgment, it will not be considered.[5] *See Mina Investment Holdings Ltd. v. Lefkowitz,* 184 F.R.D. 245, 251 (S.D.N.Y.1999).

Kunica also posits that the Court "ignored" Sections 349 and 363 of the Bankruptcy Code and improperly relied instead on Sections 727(a) and 1141(d) which provide that liquidating corporations cannot get a discharge under Chapter 7 and Chapter 11, respectively. In fact, the Court held that:

> Given the critical importance of full and candid disclosure in Chapter 11 proceedings, it cannot be that the requirement of adequate disclosure evaporates because a reversion of property is obtained by dismissal, under § 349, as opposed to abandonment under § 554. To hold otherwise would be to encourage a procedural end-run around the disclosure requirements, thereby rewarding parties that fail to comply with the directive of § 1125. Thus, a bankruptcy discharge is not a prerequisite to a finding that a debtor lacks standing to assert undisclosed claims post-bankruptcy.

*Kunica,* 233 B.R. at 54–55. The Opinion then goes on to state that "[a] number of factors particular to the present action militate in favor of this conclusion," *See id.* at 55. One such factor is that Sci–O–Tech's sale of substantially all of its assets combined with its lack of any continuing operations, "suggests that even if a plan were

confirmed, Sci–O–Tech could not have obtained a discharge [pursuant to Sections 727(a) and 1141(d).]" *Id.*

■ Finally, Kunica asserts that informal communications to an attorney for the Creditor's Committee constitutes formal notice to all parties in interest, the U.S. Trustee and the bankruptcy court. This matter was raised and briefed on the underlying motion and addressed in the Opinion. *See id.* at 57. Rejection of a party's assessment of the law is not a proper ground on which to seek reconsideration. *See Mina,* 184 F.R.D. at 250; *Farkas v. Ellis,* 783 F.Supp. 830, 833 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (2d Cir. 1992); *see also Lehmuller v. Incorporated Village of Sag Harbor,* 982 F.Supp. 132, 135 (E.D.N.Y.1997) (noting that "courts have reiterated that a Rule 6.3 motion is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved").

## II. *Subject Matter Jurisdiction*

Kunica submits that the conclusion on page one of the Opinion, taken from the complaint, that "Rogers is a New York resident" is incorrect. In his Answer, Rogers denies that he maintains a residence at 500 Park Avenue, Suite 25B, New York, New York 10022. In his Notice of Removal of Civil Action ("Notice of Removal"), Rogers states that he is "an individual residing in London, England." (Notice of Removal ¶ 4). In paragraph 5 of the Notice of Removal, Rogers asserts that complete diversity exists in this matter bringing this litigation within 28 U.S.C. § 1332 and qualifying it for removal to this Court under 28 U.S.C. § 1441(a). However, Rogers apparently denies the allegations of diversity jurisdiction contained in the Amended Complaint. (*See* Answer to Amended Complaint at ¶ 2). These con-

---

**5.** It bears noting that Kunica has cited various decisions in support of his position that were not including in opposing the underlying motion for summary judgment. As these de- cisions are neither controlling nor properly before the Court, they will not be considered or analyzed.

flicting admissions and denials raise the issue of whether the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See, e.g., Shahmoon Industries, Inc. v. Imperato,* 338 F.2d 449 (3rd Cir.1964) (where record casts doubt as to jurisdiction, trial court must determine whether there are adequate grounds to sustain its jurisdiction over subject matter).

■ Complete diversity of parties is required in order that diversity jurisdiction obtain. "The presence of a nondiverse party automatically destroys original jurisdiction: No party need assert the defect. No party can waive the defect, or consent to jurisdiction." *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (*citing Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

■ To be a citizen of a state within the meaning of the diversity provision a natural person must be both (1) a citizen of the United States, or a permanent resident alien, and (2) a domiciliary of that state. Domicile normally requires the concurrence of physical presence in a state and the intent to make such a state one's home. *See* Moore's Federal Practice and Procedure, Vol. 1 § 5.06[3]. Rogers does not appear to satisfy either of these conditions, as he is an alien, a British citizen residing in London, England.

■ It is uncontroverted that Kunica is also an alien, a Canadian citizen domiciled in Georgetown, Ontario, Canada. The presence of aliens on two sides of a case destroys diversity jurisdiction. *See Corporacion Venezolana de Fomento v. Vintero Sales Corporation,* 629 F.2d 786, 790 (2d Cir.1980). Thus, the Court lacks subject matter jurisdiction over this action. *Cf. Kaufman & Broad, Inc. v. Gootrad,* 397 F.Supp. 1054 (S.D.N.Y.1975); *Lloyds*

*Bank PLC v. Norkin,* 817 F.Supp. 414 (S.D.N.Y.1993).

■ While it is true that objections to improper removal may be waived, *see Mackay v. Uinta Dev. Co.,* 229 U.S. 173, 33 S.Ct. 638, 57 L.Ed. 1138 (1913), it is equally true that the parties to litigation cannot confer jurisdiction by consent or waiver. *See id.* at 176, 33 S.Ct. 638. A case will be remanded to the state court unless the district court had jurisdiction at the time of final judgment. *See Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972); *Fax Telecommunicaciones, Inc. v. AT & T,* 138 F.3d 479, 488 (2d Cir.1998). In the present case, the Court lacked subject matter jurisdiction over this case at the time of final judgment. Accordingly, Kunica urges that the judgment must be vacated and the case remanded to state court.

■ Defendants concede that Rogers' presence destroys the diversity jurisdiction of this Court,[6] but maintain that the proper remedy is not to remand the entire case, but rather only plaintiff's claims against Rogers, "thereby preserving the Court's jurisdiction and the integrity of its prior decisions." (Defendants' Brief at 1).

■ Pursuant to Rule 21 of the Federal Rules of Civil Procedure, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms that are just." Fed.R.Civ.P. 21; *see also Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 834, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ("it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."); *Curley v. Brignoli, Curley & Roberts As-*

---

**6.** Defendants assert that Rogers is a United States citizen residing in England, and therefore, diversity jurisdiction is destroyed because he is "stateless." *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 829,

109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Regardless of whether Rogers is an alien or "stateless," the effect upon the subject matter jurisdiction of this Court is the same.

*socs.*, 915 F.2d 81 (2d Cir.1990); *Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir.1987). "Unless it appears that a nondiverse defendant cannot be dropped from an action without prejudice to the remaining defendants ... failure to do so is an abuse of discretion." *Samaha v. Presbyterian Hosp.*, 757 F.2d 529, 531 (2d Cir.1985); *Varley v. Tampax, Inc.*, 855 F.2d 696, 700 (10th Cir.1988). The Supreme Court has determined that resort to Rule 21 is particularly appropriate where the parties have proceeded through summary judgment or trial before the jurisdictional defect is detected. *See Newman–Green*, 490 U.S. at 836, 109 S.Ct. 2218; *cf. Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75, 117 S.Ct. 467, 136 L.Ed.2d 437 ("[o]nce a diversity court case has been tried in federal court ... consideration of finality, efficiency, and economy become overwhelming.").

 A court's discretion to dismiss a party pursuant to Rule 21 is circumscribed only by the "equity and good conscience test" of Fed.R.Civ.P. 19(b). *See Curley*, 915 F.2d at 90. The Second Circuit has held that:

> [a]s an alternative to dismissal, a court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit. The phrase "good conscience" implies a careful and constructive consideration of those parties that are necessary to the litigation. As a consequence, very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their non-joinder makes just resolution of the action impossible.

*Jaser*, 815 F.2d at 242 (*citing Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). Under Rule 19(b), a court considers the following four factors in determining whether a party is indispensable: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties, (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (3) whether a judgment rendered in the person's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *See* Advisory Committee Notes to Fed.R.Civ.P. 19(b); *Jaser*, 815 F.2d at 243.

Upon application of the 19(b) factors, it appears that Rogers is not an indispensable party. Any judgment rendered in Rogers' absence will not be prejudicial to him or to St. Jean. This Court has dismissed all claims against St. Jean, thus there are no claims against St. Jean to which Rogers can be an indispensable party. With respect to Rogers, he will be required to litigate plaintiff's claims against him in state court whether this Court remands the entire case or just those claims against him. Similarly, there is no prejudice to Kunica who will have a claim against Rogers in state court.[7] By contrast, if diversity jurisdiction is not preserved, St. Jean will suffer substantial prejudice. This case has been hotly litigated for two years at substantial costs to the parties. There is no discernable reason to force St. Jean to make the same motions again in state court. *See Varley*, 855 F.2d at 701 ("Because the district court in the instant case granted summary judgment in favor of Tampax on all claims of the plaintiffs, it seems unfair and inequitable to us to allow the plaintiffs a second chance to establish their claims against Tampax, and, conversely, to require Tampax to resist for a second time claims upon

---

7. Kunica contends that he will be prejudiced if forced to try the case two times. Specifically, Kunica posits that he should not be required to simultaneously appeal this case to the Second Circuit and pursue virtually identical claims against Rogers in a state court action. While this contention has merit, it is outweighed by considerations of "finality, efficiency and economy." *Caterpillar*, 519 U.S. at 75, 117 S.Ct. 467.

which it has already prevailed on the merits.").

Kunica submits that Rogers would be prejudiced if the action proceeded against St. Jean alone because "Rogers may be subject to Plaintiff's use of collateral estoppel to estop Rogers from litigating in state court issues decided in this action," or because "an adverse result in this case would be an unfavorable precedent for Rogers in a state court action." (Plaintiff's Reply Brief at 9). However, Rogers can only be subject to collateral estoppel if the issues in this action were decided against St. Jean. This case has proceeded to judgment and all of the issues have been decided in favor of St. Jean. *See Kunica*, 233 B.R. 46. Thus, Kunica's concerns about the effects an unfavorable decision against St. Jean would have on Rogers are unfounded.[8]

Kunica also posits that a judgment rendered against St. Jean in Rogers' absence would be prejudicial to plaintiff as St. Jean is an alter ego of Rogers and, therefore, Rogers is "directly responsible for, and may be held liable for, any judgment rendered against St. Jean." (Plaintiff's Reply Brief at 10). However, even assuming that St. Jean is an alter ego of Rogers, this Court has determined that Kunica is not entitled to a judgment against St. Jean. Accordingly, Kunica's assertion that Rogers' absence would prejudice his ability to enforce a judgment against St. Jean, or that a judgment against St. Jean is inadequate is baseless.[9]

Accordingly, as Rogers is not an indispensable party, he is dismissed from this action. All claims against Rogers are hereby remanded to the Supreme Court of New York, County of New York. Federal jurisdiction is preserved as to plaintiff's claims against St. Jean, as is the "integrity" of this Court's order granting summary judgment in favor of St. Jean. *Varley*, 855 F.2d at 701.

### III. *Kunica's Motion for Attorney Fees and Costs is Denied*

28 U.S.C. § 1447(c) states:

A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as the result of removal. A certified copy of the order of remand shall be mailed to the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

■ Although the remand statute permits the award of costs and fees, it does not mandate them. *See* 28 U.S.C. § 1447(c) (remand order *"may* require payment" of costs and fees) (emphasis added); *Mermelstein v. Maki*, 830 F.Supp. 184, 186 (S.D.N.Y.1993). Section 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees," *Morgan Guar. Trust v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir.1992), and "requires application of a test of 'overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties.' " *Id.* at 923 (*citing Morgan Guar. Trust v. Republic of Palau*, 767 F.Supp. 561, 563 (S.D.N.Y.1991)).

■ Kunica alleges that Defendants were "playing fast and loose with the jurisdiction of the Court," (Plaintiff's Brief at 6), and relies on *Morgan Guar. Trust v. Republic of Palau*, for the proposition that

8. Indeed, Rogers is unconcerned about the potential effect a remand would have on him.

9. Kunica concedes that he will have an adequate remedy if this case is remanded to state court in its entirety. Kunica does not advance any compelling reason why partial remand would not provide an adequate remedy as well.

the Defendants should be required to pay costs an attorney fees "[a]s just reward for their skillful deception." In *Morgan Guaranty*, the defendant removed the action to federal court on the basis that it was a foreign state, and that therefore, jurisdiction existed under 28 U.S.C. §§ 1330 and 1441(d). Unlike the plaintiff in the instant case, the plaintiffs in *Morgan Guaranty* promptly moved to remand the case, which defendant opposed on the ground that it was either a *de jure* sovereign or a *de facto* sovereign. *See* 767 F.Supp. at 562. After the district court denied the remand motion based upon the defendant's stated position, the parties litigated the case for five years, resulting in a six-day bench trial and a $45 million verdict for plaintiff. On appeal, the Second Circuit raised the question of diversity jurisdiction *sua sponte*, and required the parties to brief the issue. In response to the court's inquiry, the defendant completely departed from the position it took in opposition to plaintiff's remand motion. In affirming the district court's award under Section 1447(c), the Second Circuit found that after the remand motion, the defendant became aware of facts indicating that diversity jurisdiction was doubtful, purposely remained silent on the jurisdictional issue, and only changed its position after the court required briefing on the issue. As the court stated, "[I]n short, Palau was content to behave as a sovereign until we forced the issue and called for further briefing. Palau then essentially changed its position and all but expressly admitted it was not a foreign state, on the basis of facts of which Palau had been aware for some time." 971 F.2d at 924.

In present case, unlike *Morgan Guaranty*, it appears that both parties are at fault. While there is no direct evidence that Defendants' removal was made in bad faith or that the Notice of Removal was deceptive, it does seem odd that experienced counsel would, contrary to overwhelming authori-

ty, draw the erroneous legal conclusion that diversity jurisdiction existed because "[n]either of the Defendants is a citizen of Canada, and there is no indication that Plaintiff is a citizen or subject of either Delaware or England." [10] On the other hand, the Notice of Removal on its face provided Kunica with everything he, and his own experienced counsel, needed to determine that removal was improper. It is thus a bit suspect that Kunica would wait two years and until after all of his claims were dismissed to address the issue of subject matter jurisdiction. *See Mermelstein*, 830 F.Supp. at 186–87; *Children's Village v. Greenburgh Eleven Teachers' Union*, 867 F.Supp. 245, 248 (S.D.N.Y.1994).

Thus, although Defendants bear the burden and risk of establishing the statutory and jurisdictional basis for removal, *see Wallace v. Wiedenbeck*, 985 F.Supp. 288 (N.D.N.Y.1998), given "the nature of the case, the circumstances of the remand, and the effect on the parties," *Morgan Guaranty*, 971 F.2d at 923, Kunica's motion for costs and attorney fees is denied.

### Conclusion

For the reasons stated above, Defendants' motion is granted, and Kunica's motions are denied. All claims against Rogers are hereby remanded to the Supreme Court of New York, County of New York. Federal jurisdiction is preserved as to plaintiff's claims against St. Jean, this Court's order granting summary judgment in favor of St. Jean is sustained. Enter judgment on notice.

It is so ordered.

---

**10.** Although not required, bad faith is one of the factors that courts have considered in cost

and fee applications. *See Morgan Guaranty*, 971 F.2d at 923–24.