Fidelis I. Omegbu, Plaintiff-Appellant,
v.
George Y. Nicholson and U.S. Bank, Defendants-Respondents.
No. 2004AP1096.
Court of Appeals of Wisconsin.
Opinion Filed: April 19, 2005.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1 CURLEY, J.
Fidelis I. Omegbu appeals, pro se, from the trial court's grant of summary judgment dismissing his claim against U.S. Bank and George Y. Nicholson on the grounds of judicial estoppel and lack of standing. Omegbu appears to contend that the trial court erred in concluding that his failure to disclose his claims against U.S. Bank and Nicholson during his bankruptcy proceedings estops him from raising them now because estoppel does not apply since his case was dismissed before discharge, his failure to list these claims was inadvertent, and no "position" was adopted before the dismissal. We conclude that the trial court properly granted summary judgment because Omegbu is judicially estopped from raising these claims, and we affirm.

I. BACKGROUND.
¶2 On August 12, 2003, Omegbu filed a voluntary petition for relief with the United States Bankruptcy Court for the Eastern District of Wisconsin, under chapter 7 of the United States Bankruptcy Code. One week later, as required, Omegbu filed his schedules of assets and liabilities. See 11 U.S.C. § 521(1). Schedule B required Omegbu to list his "personal property," including, inter alia, "accounts receivable," "property settlements to which the debtor is or may be entitled," "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," and "other personal property of any kind not already listed." In Schedule G, under "executory contracts and unexpired leases," Omegbu listed "real estate offer to purchase property from George Nicholson with terms and conditions." Nowhere, however, did he mention any of the claims he allegedly had against U.S. Bank or Nicholson.[1]
¶3 It appears that, at the time of the bankruptcy, Omegbu was residing in a condominium owned by Nicholson, which Omegbu had allegedly contracted with Nicholson to purchase. Omegbu apparently acquired keys to the premises before the sale was executed. After the deal seemingly soured, Nicholson sought to have Omegbu evicted from the premises. Pursuant to 11 U.S.C. § 362, however, the filing of a bankruptcy petition under Title 11 operated as a stay of a number of actions that may be taken by others against the debtor, including eviction. As such, Nicholson's eviction action was stayed once Omegbu's bankruptcy case was filed.
¶4 Several weeks later, Omegbu filed this lawsuit, pro se, against Nicholson and U.S. Bank, claiming breach of contract, fraud, "payment of forged checks," "negligent transfer of funds," and "refusal to recredit account of Plaintiff." In it, he requested a judgment against U.S. Bank seeking damages in the amount of $30,699, plus any "[p]unitive damages to be proven at trial." All of the events alleged occurred prior to August 2003.
¶5 On September 26, 2003, Omegbu amended his schedules of assets and liabilities. However, instead of amending his schedules to correct any previous omissions, and adding the claim against U.S. Bank as a potential asset, for example, he amended his schedules to indicate that he had no personal property at all. Sometime thereafter, after apparently finding Omegbu's disclosures deficient, the bankruptcy trustee asked Omegbu to file all appropriate amendments. The bankruptcy trustee also informed Omegbu that "it appears that you have pursued various claims subsequent to the bankruptcy filing. This is inappropriate since any claims that you had as of the filing date of the bankruptcy passed to me in my capacity as trustee for your case."
¶6 On October 21, 2003, the bankruptcy court lifted the automatic stay under 11 U.S.C. § 362, ordering the stay "annulled to permit ... Nicholson to pursue all state court remedies [he has] against ... Omegbu in obtaining a writ of restitution for the property at 9070 F. North 95th Street."
¶7 Shortly thereafter, on October 31, 2003, Omegbu attempted to voluntarily dismiss his bankruptcy case, although that had no apparent effect on the bankruptcy proceedings. After Omegbu failed to appear for a meeting of creditors scheduled for November 3 and failed to provide various requested documents to the bankruptcy trustee, the bankruptcy court dismissed Omegbu's bankruptcy case on November 14 on the trustee's motion.
¶8 On January 14, 2004, U.S. Bank filed a motion for summary judgment asserting that Omegbu is judicially estopped from pursuing these claims, or, in the alternative, that the complaint must be dismissed with prejudice because Omegbu has no standing to maintain his asserted claims. The trial court granted U.S. Bank's motion concluding that Omegbu is judicially estopped from raising these claims, and also that he lacked standing to file the complaint at the time he filed. Omegbu now appeals.

II. ANALYSIS.
¶9 In an appeal from the entry of summary judgment, this court reviews the record de novo, applying the same standard and following the same methodology required of the trial court under WIS. STAT. § 802.08 (2003-04). See Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987). That methodology is well known, and need not be repeated here. See § 802.08; Grams v. Boss, 97 Wis. 2d 332, 338-39, 294 N.W.2d 473 (1980).
¶10 The equitable doctrine of judicial estoppel "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position." State v. Petty, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996). Its purpose is to protect the judiciary as an institution. Salveson v. Douglas County, 2001 WI 100, ¶37, 245 Wis. 2d 497, 630 N.W.2d 182. That is, the doctrine is intended to "`protect against a litigant playing "fast and loose with the courts" by asserting inconsistent positions.'" Petty, 201 Wis. 2d at 347 (citations omitted). As the rule "`looks toward cold manipulation and not unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on fraud, inadvertence, or mistake.'" Id. (citation omitted).
¶11 Three elements are required to invoke judicial estoppel: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." Salveson, 245 Wis. 2d 497, ¶38. While it is within the discretion of the trial court to invoke judicial estoppel, Petty, 201 Wis. 2d at 346-47, we determine de novo "whether the elements of judicial estoppel apply to the facts of a given case[,]" Salveson, 245 Wis. 2d 497, ¶38. Moreover, because the argument for judicial estoppel arose in the context of Omegbu's bankruptcy petition, federal law presumably applies. See MV Stacey D. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.), 374 F.3d 330, 334 n.3 (5th Cir. 2004).
¶12 Many courts have held that judicial estoppel prohibits debtors from asserting claims they failed to disclose during bankruptcy proceedings. "It has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest. The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions." Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988) (citations omitted). Moreover, there is no requirement that a lawsuit be pending in order to trigger the debtor's responsibility to disclose the claim as an asset. See 11 U.S.C. § 541(a)(1); Erickson v. Baxter Healthcare, Inc., 94 F. Supp. 2d 907, 912 (N.D. Ill. 2000) ("Section 541 of the Bankruptcy Code provides that upon the commencement of a bankruptcy case, an estate is created comprising `all legal and equitable interests of the debtor in property[.]' A cause of action is property, and has been so regarded for purposes of the Bankruptcy Code.") (citations omitted).
¶13 In Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993) (citation omitted), the United States Court of Appeals for the First Circuit observed:
The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in [the debtor's] present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. [The debtor], having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis.... [I]t is an unacceptable abuse of judicial proceedings.
The applicability of judicial estoppel is, however, less clear when a bankruptcy case ends in dismissal instead of discharge.
¶14 As such, Omegbu argues that because his bankruptcy case ended with a dismissal, and not a discharge, he cannot be judicially estopped from raising these claims, even though he failed to disclose them in his schedules and statements during his bankruptcy proceedings. He relies on Central Jersey Freightliner, Inc. v. Freightliner Corp., 987 F. Supp. 289 (D.N.J. 1997), from which he lifts a large portion of his argument, substituting his name in the place of CJF (or, Central Jersey Freightliner), in support of his position. In Central Jersey Freightliner, the court concluded that the debtor could not be estopped from pursuing its claims, which were undisclosed in its bankruptcy schedules or statements, because no plan was confirmed in the debtor's bankruptcy case, as it was dismissed prior to confirmation or discharge. Id. at 294. The court concluded that "[t]he principles behind the Code and case law do not favor application of estoppel to bar litigation of nondisclosed claims in such a circumstance[,]" for two reasons: (1) "under the Bankruptcy Code, a debtor retains the right to amend its schedules and statements up until confirmation of a plan[, and a]bsent confirmation of a plan, there is no definitive proof that a debtor would not have disclosed its causes of action before an order of confirmation[;]" and (2) "absent a confirmed plan, it would be difficult for a creditor to demonstrate any real detrimental reliance on the debtor's nondisclosure." Id. Citing 11 U.S.C. § 349, the court noted that "[w]hile a plan fixes parties' rights and obligations, dismissal of a bankruptcy case essentially restores the parties to the position they assumed prepetition." Central Jersey Freightliner, 987 F. Supp. at 294.
¶15 Omegbu asserts that while he may have failed to include these claims in his bankruptcy schedules, any failure to do so was inadvertent. He contends that he has not taken clearly inconsistent positions, and has not "prevail[ed] in any court due to his inconsistency at bar." He argues that "[t]here is no inconsistency in evidence that has prejudiced Nicholson, or that U.S. Bank has suffered such a great loss in a prior case" due to his failure to include the claims in his schedules. Omegbu insists that he has not been playing fast and loose with the courts.
¶16 U.S. Bank contends that we should decide this case under Kunica v. St. Jean Financial, Inc., 233 B.R. 46 (S.D.N.Y. 1999), a more recent case concluding that the debtor lacked standing and was judicially estopped from raising a claim undisclosed in the bankruptcy schedules regardless of the fact that the case was dismissed and not discharged. In Kunica, the court concluded that even though 11 U.S.C. § 349 provides that the dismissal of a case "`revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case[,]'" Kunica, 233 B.R. at 53 (citation omitted), and the purpose is to restore the property rights to their pre-filing position, "[a] dismissal of a bankruptcy case, ... as opposed to a discharge, should not provide a debtor with a safe harbor against lack of standing to pursue causes of action that were not properly disclosed[,]" id. at 53-54. The court concluded that the real issue was not dismissal or a discharge, but disclosure. It reasoned that the "Bankruptcy Code requires disclosure to protect creditors from a debtor who may try to hide assets and maximizes judicial efficiency[, and that] `[t]he importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.'" Id. at 54 (considering the effect of 11 U.S.C. § 1125 and the "adequate information" requirement) (citations omitted; emphasis added). Thus:
Given the critical importance of full and candid disclosure in [bankruptcy] proceedings, it cannot be that the requirement of adequate disclosure evaporates because a reversion of property is obtained by dismissal, under § 349, as opposed to abandonment under [11 U.S.C.] § 554. To hold otherwise would be to encourage a procedural end-run around the disclosure requirements, thereby rewarding parties that fail to comply with the directive of § 1125. Thus, a bankruptcy discharge is not a prerequisite to a finding that a debtor lacks standing to assert undisclosed claims post-bankruptcy.
Kunica, 233 B.R. at 54-55 (footnote omitted).[2]
¶17 The court went on to conclude that judicial estoppel likewise applies where a bankruptcy case was dismissed, as opposed to discharged, and in fact, "the distinction between discharge and dismissal is particularly lacking in substance in the context of judicial estoppel." Id. at 58. It observed that one of the rationales behind the doctrine of judicial estoppel is to protect the integrity of the judicial process, and "[i]n the bankruptcy context, `the rational for these [estoppel] decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'" Id. (citation omitted).
¶18 Kunica concluded that the debtor's repeated failure to adequately disclose the claims it was now pursuing amounted to "the assertion of inconsistent positions within the meaning of the judicial estoppel doctrine[,]" id., and seemingly concluded that because the bankruptcy court dismissed the case based on a motion indicating that "`no purpose would be served by Debtor remaining in bankruptcy[,]'" and had the bankruptcy court known of the claims, it may not have dismissed the case, "it is arguable that the bankruptcy court adopted [the debtor's] position concerning its assets[,]" id. at 59 (citation omitted). Kunica also alluded to the general assumption that it is reasonable to conclude that a debtor gains an advantage from failing to disclose a substantial asset, and also to evidence in the record indicating that the debtor's omissions were not inadvertent, in justifying its conclusion.
¶19 In light of the circumstances of this case, we find this reasoning persuasive.[3] Although the backgrounds and circumstances in Kunica and this case are distinguishable, the court's evaluation of the general issue provides valuable guidance for our analysis. We agree with the trial court, and conclude that judicial estoppel applies here, for the reasons that follow.
¶20 When Omegbu filed the requisite schedules of assets and liabilities, he omitted any mention of the claims he is now attempting to assertnot once, but twice. He failed to include them in either his original or his amended filings. Omegbu also failed to disclose these claims even after he filed this action and the bankruptcy trustee informed him of the impropriety of his actions, seeing as "any claims that you had as of the filing date of the bankruptcy passed to me in my capacity as trustee for your case." By failing to disclose these claims, he essentially represented that he had none. Yet, while the bankruptcy case was pending, he filed this action. Those are clearly inconsistent positions.
¶21 Moreover, his repeated failure to disclose these claims not only amounts to asserting inconsistent positions, but also leads to the conclusion that he was doing so consciously and deliberately. Indeed, he made no other attempts to amend his filings before he sought to have the bankruptcy case dismissed. He knew of the claims at the time, as is evidenced by the fact that he filed this action while his bankruptcy petition was pending, and he seemingly had a motive to conceal themby filing for bankruptcy without disclosing the claims, he could have the eviction proceedings stayed without giving up the opportunity to assert his claims against Nicholson and U.S. Bank independently. See, e.g., Superior Crewboats, Inc., 374 F.3d at 335 ("`[T]he debtor's failure to satisfy its statutory disclosure duty is "inadvertent" only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'") (citation and emphasis omitted). These circumstances suggest that Omegbu is playing fast and loose with the court system.
¶22 The facts at issue are also the same. The claims that Omegbu asserts here against U.S. Bank and Nicholson are the very claims that should have been disclosed in his schedules of assets and liabilities.
¶23 And finally, while we do not know what the bankruptcy court might have done had Omegbu disclosed these claims, we do know that the case was dismissed due to Omegbu's failure to attend the requisite meetings and supply the bankruptcy trustee with adequate information. We also know that prior to dismissal by the bankruptcy court, in addition to amending his schedules to indicate that he actually had no assets, as opposed to the over $100,000 in assets he originally disclosed, Omegbu attempted to dismiss his own case after Nicholson successfully moved the court to lift the automatic stay. Had Omegbu properly disclosed all of his assets, it is highly possible that the bankruptcy court would not have dismissed his case at all. As such, the bankruptcy court arguably adopted his "position" regarding his assets in dismissing the case.
¶24 In light of the circumstances of this case, we see no reason to preclude the invocation of judicial estoppel merely because the bankruptcy case did not end in discharge. Omegbu seemingly argues that there is nothing to indicate that there was any reliance on his representations and disclosures, and he has not prevailed in any court "due to his inconsistency at bar." As U.S. Bank argues, however, he essentially "won" dismissal of his bankruptcy case after the stay was lifted when he amended his schedules to indicate that he had no assets, refused to provide the bankruptcy trustee with the requested information and documents, and failed to appear for the meeting of creditors. After the dismissal, he continued to pursue a claim he swore he did not have. Under these circumstances, the fact that his bankruptcy case was dismissed instead of discharged is not dispositive. Omegbu seeks to benefit from inconsistent victories through the manipulation of the judicial process, and he should be estopped from doing so. One of the central concerns of the doctrine of judicial estoppel is preserving the integrity of the judicial processjudicial estoppel "is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." Levinson v. United States, 969 F.2d 260, 264 (7th Cir. 1992). Moreover, in regard to any alleged lack of reliance, we note that "`judicial estoppel is not directed to the relationship between the parties, but is intended to protect the judiciary as an institution from the perversion of judicial machinery[.]'" Petty, 201 Wis. 2d at 346 (citation omitted).
¶25 Because we conclude that Omegbu is judicially estopped from pursuing these claims, there is no need to reach U.S. Bank's alternative argument. Accordingly, we affirm.
By the Court.  Judgment affirmed.
NOTES
[1] Omegbu did list several pending cases in which he was involved in his "Statement of Financial Affairs," under item 4, entitled "suits and administrative proceedings, executions, garnishments and attachments."
[2] The court also notes, in a footnote, that the "revesting" rule of 11 U.S.C. § 349 is not without exceptions. Kunica v. St. Jean Fin., Inc., 233 B.R. 46, 54 n.2 (S.D.N.Y. 1999).
[3] It is important to note, however, that while Kunica, 233 B.R. at 54, indicated that "[t]he parties do not cite and independent research has not revealed any authority dealing with the effect of dismissal on non-disclosed claims[,]" a case coming to the opposite conclusion, and upon which Omegbu relies, Central Jersey Freightliner, Inc. v. Freightliner Corp., 987 F. Supp. 289 (D.N.J. 1997), had been decided two years earlier. In fact, after the decision was rendered in Kunica, the debtor moved for reconsideration citing Central Jersey Freightliner. The court rejected the argument, however, explaining that "on the underlying motion neither party cited any authority dealing with non-disclosure in the context of a dismissal prior to confirmation. As Central Jersey Freightliner was not put before the Court on the underlying motion for summary judgment, it will not be considered." Kunica v. St. Jean Fin., Inc., 63 F. Supp. 2d 342, 348 (S.D.N.Y. 1999) (footnote omitted). Nonetheless, Kunica is good law, and we find its reasoning persuasive.